IN THE UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AJ FULLER,                             )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )         1:19CV742
                                       )
ANDREW M. SAUL,                        )
Commissioner of Social Security,[1]    )
                                       )
                    Defendant.         )


                **MEMORANDUM OPINION AND RECOMMENDATION**
                    **OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, AJ Fuller, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 13; see also Docket Entry 13 (Plaintiff's Memorandum); Docket Entry 16 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") and SSI, alleging a disability onset date of June 1, 1997. (Tr. 271-76.)[2] Upon denial of those applications initially (Tr. 71-103, 164-71) and on reconsideration (Tr. 104-38, 177-94), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 195-96). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing (Tr. 40-70), during which Plaintiff amended his onset date to March 5, 2015 (Tr. 43-44).[3] The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 11-26.)

The Appeals Council thereafter granted Plaintiff's request for review (Tr. 264-65, 407-08) and issued a "Notice of Appeals Council Action" (Tr. 266-70), noting that "[t]he [ALJ] found that [Plaintiff] ha[d] moderate limitations in [his] ability to concentrate, persist, or maintain pace," but that "the assessed residual functional capacity [('RFC')] d[id] not include corresponding mental limitations" (Tr. 267). In light of that discrepancy, the Appeals Council proposed to amend the RFC by "adopt[ing] the limitations opined by the [s]tate agency psychological consultants that [Plaintiff was] able to understand

---

[2] Plaintiff's application for DIB does not appear in the record.

[3] Because March 31, 2001, constituted Plaintiff's date last insured for DIB, Plaintiff's amendment of his alleged onset date from June 1, 1997, to March 5, 2015, invalidated Plaintiff's claim for DIB. (See Tr. 14.)

2

and remember short and simple instructions and perform simple tasks" (id.) but otherwise adopting the ALJ's findings, including that "jobs [] exist[ed] in the significant numbers in the national economy that [Plaintiff was] capable of performing" (Tr. 268), and that Plaintiff "ha[d] not been disabled from March 5, 2015, the application date, through January 4, 2018, the date of the [ALJ]'s decision" (Tr. 269). The Appeals Council provided Plaintiff's counsel with 30 days to submit additional argument and/or evidence in response to its Notice (see Tr. 269), and Plaintiff's counsel sent in a letter brief reiterating his prior arguments in support of the request for review (Tr. 409-10). The Appeals Council thereafter issued a decision in accord with its prior Notice (Tr. 1-10), which constitutes the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the Appeals Council made the following findings:

> 1. [Plaintiff] has not engaged in substantial gainful activity since the alleged disability onset date of March 5, 2015.
>
> 2. [Plaintiff] has the severe impairments of degenerative disk disease of the cervical spine; kyphosis; Crohn's disease; depression and anxiety.
>
> 3. The severity of [Plaintiff]'s impairments does not meet or equal the requirements of an impairment in the Listing of Impairments (20 CFR Part 404, Subpart P, Appendix 1). [Plaintiff] has the following limitations in the paragraph B criteria: no limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself.

3

4.   [Plaintiff] has the [RFC] to perform medium work
. . . except he is limited to lifting and carrying 20
pounds occasionally and 10 pounds frequently with the
non-dominant left upper extremity; frequent reaching with
the left upper extremity in all directions; frequent
interaction with others; two extra unscheduled bathroom
breaks per day; and he is able to understand and remember
short and simple instructions and perform simple tasks.

5.   [Plaintiff]'s subjective complaints are not fully
consistent with the medical evidence for the reasons
identified in the body of the hearing decision.

6.   [Plaintiff] has no past relevant work.

. . .

8.   Based on [Plaintiff]'s age, education, work
experience, and [RFC], [Plaintiff] is not disabled under
the framework of Medical-Vocational Rules [sic] 203.21,
20 CFR Part 404, Subpart P, Appendix 2.

9.   [Plaintiff] has not been disabled as defined in the
. . . Act at any time from March 5, 2015, the alleged
disability onset date, through January 4, 2018, the date
of the [ALJ]'s decision.

(Tr. 7.)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

4

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[4] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

---

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[7] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B. Assignment of Error

In Plaintiff's first and only assignment of error, he maintains that "[t]he ALJ committed a reversible error by failing to account for [Plaintiff]'s limitations in concentration, persistence, or pace [('CPP')] in [the] mental [RFC] assessment." (Docket Entry 11 at 3 (bold font and single-spacing omitted.)[8] More specifically, Plaintiff argues that the United States Court of Appeals for the Fourth Circuit has held that "'an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work,'" that "'[the] ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP].'" (Id. (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (internal quotation marks omitted)).) According to Plaintiff, "[t]he Appeals Council committed the same reversible error as the ALJ in *Mascio*," because "[t]he Appeals Council found at step three of [SEP] that [Plaintiff] ha[d] a "moderate limitation in [CPP]" (id. at 4 (quoting Tr. 5)) but, "[i]n assessing [Plaintiff]'s mental RFC, the Appeals Council found only that "he [wa]s able to understand and remember short and simple instructions and perform

---

[8] Although Plaintiff's assignment of error attributes error to the ALJ (see Docket Entry 11 at 3), the Appeals Council issued the Commissioner's final decision in this matter (see Tr. 1-10).

9

simple tasks" (id. (quoting Tr. 7)). Those assertions entitle Plaintiff to no relief.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]," Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added).

In this case, the Appeals Council noted that it "adopt[ed] the [ALJ]'s statements regarding . . . the evidentiary facts" of the case (Tr. 4), and that Plaintiff's "subjective complaints [we]re not fully consistent with the medical evidence <u>for the reasons identified in the body of the hearing decision</u>" (Tr. 7 (emphasis added)). Thus, the Court may look to both the ALJ's and the Appeals Council's decisions to determine whether the Appeals Council complied with Mascio. Here, the ALJ's discussion of the mental health evidence of record and analysis of Plaintiff's

10

subjective symptom reporting (see Tr. 19-24) in combination with the Appeals Council's adoption of the state agency psychological consultants' opinions (see Tr. 5) provides a sufficient explanation as to why the Appeals Council's restrictions to short and simple instructions and simple tasks adequately accounted for Plaintiff's moderate deficit in CPP (see Tr. 7).

The ALJ recognized Plaintiff's subjective complaints of "depressed mood, lack of focus, short-term memory problems, lack of motivation at times, . . . lack of energy, nervousness and anxiousness, . . . worrying at times" (Tr. 23), "difficulty sleeping, fatigue, feeling panicky, difficulty socializing or even leaving the house, and problems with open spaces" (Tr. 20), but found that his "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." (Tr. 22.) The ALJ supported that finding with the following analysis:

> [Plaintiff's] mental status examinations were generally unremarkable. He was alert and oriented, he was cooperative during examinations, he had normal mood and affect, his behavior was normal, his thought content was normal, his memory was intact, and his judgment and insight were intact. In addition, . . . [Plaintiff]'s overall treatment of his mental impairments was conservative, with no hospitalizations or emergency care.

(Tr. 23 (internal citations omitted).) Plaintiff has not challenged the ALJ's analysis of Plaintiff's subjective symptom reporting. (See Docket Entry 11.)

11

The ALJ also summarized Plaintiff's mental health treatment and daily activities, making the following, pertinent observations:

- "[Plaintiff] was treated at the Regional Center for Infectious Diseases (Cone Health) during the period May 2010 through July 2016 for . . . anxiety[] and depression," and his "mental status examinations were generally unremarkable" and "his overall treatment was conservative" (Tr. 21 (citing Tr. 462-558, 579-89, 616-736, 744-71, 810-21)); and

- "the evidence of record showed that [Plaintiff] was independent in h[i]s activities of daily living[, and] could bathe, dress, and feed himself; he could do some cooking, cleaning, laundry, and grocery shopping; he could take care of his dogs; he could work in the yard; and he read, watched television, and played video games" (Tr. 18 (citing Tr. 568, 785)).

Those mild mental health findings and varied daily activities lend support to the Appeals Council's finding that, despite moderate deficit in CPP, Plaintiff could stay on task sufficiently well to understand and remember short and simple instructions and perform simple tasks. (Tr. 7.)

In addition, the Appeals Council expressly adopted the opinions of the state agency psychological consultants (Tr. 5), who found that, notwithstanding moderate limitation in CPP (see Tr. 93, 114), Plaintiff remained "able to maintain attention and concentration for 2 hours at a time as required for performance of simple tasks" (Tr. 98, 119 (emphasis added)). The Fourth Circuit has found an ALJ's reliance on a substantially similar opinion from a state agency psychological consultant sufficient to account for moderate limitations in CPP under Mascio. See Sizemore v.

12

Berryhill, 878 F.3d 72, 80-81 (4th Cir. 2017) (finding ALJ's crediting of consultant's opinion that the claimant "would generally be able to maintain [attention] for at least two [hours] at a time as needed to do simple, routine tasks" satisfied Mascio).

In light of the foregoing analysis, Plaintiff has failed to demonstrate prejudicial error under Mascio and his sole assignment of error falls short.

## II. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner of Social Security (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 19, 2020